UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SERGE ADAMOV                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:09CV-868-S

U.S. BANK NATIONAL ASSOCIATION                                                  DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, U.S. Bank National Association ("U.S. Bank"), for summary judgment in this employment discrimination action. This matter arose from the discharge of the plaintiff, Serge Adamov, from his employment with U.S. Bank on August 31, 2009. Adamov alleges that he was discharged because of his Russian origin. U.S. Bank urges that Adamov has no evidence that U.S. Bank took any employment action on the basis of his nationality. It contends that Adamov cannot establish that the stated ground for his termination was a pretext for national origin discrimination. This court agrees.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving

party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2).

The following facts are undisputed.

Adamov was employed by U.S.Bank for more than ten years. He was appointed Vice President and District Manager of the Louisville market by the Board of Directors in February, 2004. He was a top producer and received exceptional evaluations.

In 2005, U.S. Bank appointed defendant, Rick Hartnack, to the position of Vice Chairman of Consumer Banking. Adamov alleges that Hartnack harbored discriminatory animus toward him due to his Russian origin and made disparaging remarks concerning his Russian heritage. Adamov was born in Russia and speaks English with a Russian accent. Adamov claims that Hartnack made the comment that "your accent gives you up." Adamov is a United States citizen. Adamov alleges, however, that Hartnack made the comment that "immigrants don't usually climb the corporate ladder." Adamov also alleges that in a meeting in his presence and in the presence of his co-workers, Hartnack stated that his employees "looked at me like I was speaking Russian." These three comments were allegedly made in 2005, 2007, and 2008, respectively.

In late 2007, the chain of command at U.S. Bank was as follows: Adamov reported to Regional Manager Arlene Mockapetris. Mockapetris reported to Executive Vice President Steven SaLoutos. SaLoutos reported to Vice Chairman for Consumer Banking Richard Hartnack. Hartnack reported to the Chief Executive Officer of U.S. Bank.

Adamov alleges that he was repeatedly denied promotions with U.S.Bank by Hartnack and SaLoutos because of his national origin. He has offered no evidence that less qualified non-Russian individuals were hired and promoted over him. (*See* Adamov Aff., ¶¶11, 12, Response Brief, p. 4).

In any event, Adamov alleges that he complained to Mockapetris that he believed he was being discriminated against because of his national origin and "because of the way I talk." Amend. Compl., ¶ 22. He claims that after complaining of discrimination, U.S. Bank conducted an investigation of him and subsequently discharged him purportedly in relation to a personal loan he had made to a college friend in 2007. Amend. Compl., ¶¶ 23, 24.

U.S. Bank contends that the investigation into Adamov's accounts was conducted as a result of a computer-generated sweep of U.S. Bank customer accounts, which also included the customer accounts of employees. Certain wire transfers of money into and out of Adamov's account purportedly alerted U.S. Bank's Security Department to perform further investigation concerning Adamov's accounts which then subsequently revealed a $10,000.00 loan to a bank customer in 2007. On August 20, 2009, Adamov was interviewed concerning the wire transfers and the loan. He indicated that he had made the loan to a college friend. After obtaining this information from Adamov, the Security Department took the matter to the Human Resources Department. There it was agreed that a recommendation would be made to Mockapetris and SaLoutos that Adamov be

discharged for violating U.S. Bank's Code of Ethics and Business Conduct, ¶ 10 which prohibited employees from lending money to customers. DN 41-2, USBANK/ADAMOV 0566.[1] It is undisputed that SaLoutos made the decision to terminate Adamov's employment. Hartnack was informed of the decision and supported it. Adamov was informed of the basis for the decision and was terminated on August 31, 2009.

Adamov contends that after he complained to Mockapetris that Hartnack was discriminating against him on the basis of his nationality,[2] the bank launched the investigation against him. First, we note that there is no basis upon which Adamov could ground a claim that the investigation itself constituted an adverse employment action, since all employees' account transactions with U.S. Bank were subject to scrutiny, and employees were on notice that questionable conduct would be investigated. Code of Ethics (DN 41-2), pp. 4; 30. Indeed, the bank is charged by law with monitoring its accounts for fraud or other misconduct. SaLoutos Depo., pp. 35-36. Further, Adamov himself notes that international wire transfer activity through his accounts[3] had triggered scrutiny of his account activity twice in the past (Resp. Br., p. 2). This evidence is supportive of the Bank's contention that a computer-generated alert prompted the investigation.[4]

---

[1] Adamov was discharged in August of 2009. The version of the Code of Ethics and Business Conduct produced by U.S.Bank and relied upon in reaching the decision to discharge Adamov is dated 09/08. The version found by Adamov on the bank's website and relied upon by him is dated 09/11. Clearly this version was not in effect at the time of Adamov's termination. There is no evidence to controvert the assertion that the 09/08 version of the Code controlled.

[2] A claim that Mockapetris has denied.

[3] SaLoutos testified that what appeared to be systematic transfers of sums in and out of Russia and moving on to Dubai were "clearly out-of-bounds activity," and subject to scrutiny. SaLoutos Depo., pp. 35-36.

[4] Adamov contends that prior wire transfers were "investigated and approved as proper," and he was not discharged until after he complained about discrimination. First, it is disputed that the wire transfers were found "proper," but it is agreed that they did not constitute dischargeable conduct. Adamov was not terminated for wire transfers, however. He was discharged for loaning money to a bank customer. Therefore, the bank's handling of the wire transfers is irrelevant to this inquiry.

Adamov urges, however, that his discharge based upon information revealed by the investigation was pretextual. In order to establish pretext, the Sixth Circuit requires that the plaintiff show (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's conduct, or (3) that the proffered reasons were insufficient to motivate the challenged conduct. *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 245 (6th Cir. 2005).

Adamov contends that the loan to his college friend was permitted under the 2011 version of the Code of Ethics which contains the additional statement that "This policy is not intended to keep you from borrowing or lending money to a family member or other individual where a personal relationship exists independently of any business of U.S. Bank." (DN 44-2, p. 27). The 2011 version of the Code of Ethics clearly could not apply to a loan made in 2007 or to Adamov's discharge for making that loan in 2009. Thus Adamov's assertion that the proffered reason for his discharge had no basis in fact is wholly unsupported and without merit.

We reach the same conclusion concerning Adamov's contention that the proffered reasons were insufficient to motivate his discharge from employment. He urges that U.S.Bank had a three-tiered disciplinary policy, but discharged him rather than warning him or providing him a disciplinary write-up. Adamov did not provide the policy nor offer any evidence concerning its implementation by U.S. Bank. SaLoutos testified that U.S. Bank did employ a disciplinary system, and there was a discussion concerning whether a viable alternative to discharge of Adamov. He tetified, however, that the loan to a bank customer was a clear violation of the ethics policy which could and did subject Adamov to termination. *See* Code of Ethics, p. 2. Mockapetris testified that the reason discipline short of termination did not occur was because Adamov's making of the loan

was an ethics violation, not a performance issue. Mockapetris Depo., p. 51. She explained that "we're in a high level position, and as leaders, you know, we can't make a mistake of this magnitude." *Id.* She testified that other employees engaged in ethics violations were terminated. *Id.* Adamov does not controvert this testimony. He has not offered evidence that any other employee engaged in substantially similar conduct was not discharged by U.S. Bank.

Based on the uncontroverted evidence, we conclude that Adamov has failed to establish that the loan was an insufficient ground for U.S. Bank to discharge him.

Adamov's final contention is that, even though he made the loan in 2007 to a bank customer, and he properly could have been discharged for that conduct, he was nevertheless discharged because of his nationality. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)("the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext or coverup.").

In support of this theory, Adamov relies on (1) three comments made by Hartnack, one in each of the years 2005, 2007, and 2008, (2) Adamov's stellar employment record, and (3) a temporal proximity of the investigation of his account activity to his purported complaint to Mockapetris concerning the failure to promote him. This evidence, taken in the light most favorable to Adamov, is insufficient to establish that it is more likely that his discharge was based upon his Russian origin than his violation of the U.S. Bank Code of Ethics.

As noted in *Guethlein v. Donahoe*, 2012 WL 3028509 (S.D. Ohio July 25, 2012),

> [A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted

independent evidence that no discrimination had occurred." [*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 S.Ct. 2097, 147 L.Ed.2d 105 (2000)]...Of course, in evaluating pretext, courts should not apply the three-part *Manzer* test in a formalistic manner. *See id.* "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must "ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong [that evidence] is." *Id.*

First, assuming that Adamov complained to Mockapetris about discrimination, a temporal proximity between such complaint and the investigation into his account activity, standing alone, is insufficient to establish the discriminatory motivation he alleges for his discharge. *See generally Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010).

Additionally, assuming that a number of references to Adamov's nationality were made by Hartnack in 2005, 2007 and 2008, it has not been established that these attenuated and isolated comments bore any connection to Adamov's discharge. Adamov urges that these comments evidence a discriminatory animus by Hartnack toward him, and that when he brought this to Mockapetris' attention in connection with his unsuccessful applications for promotion, a plan was implemented to find a reason for U.S. Bank to fire him. While we take the evidence concerning these comments in the light most favorable to Adamov, we need not draw unsupported inferences from such facts. The theory that the investigation began as a result of his bringing the comments to light is unsupported by any record evidence. The last of these comments was allegedly made by Hartnack in 2008, long before the investigation began. Adamov has admitted that his account activity had been scrutinized in the past because of international wire transfers. He has admitted that his account reflected similar wire transfers in July of 2009. Thus the contention that national origin discrimination was the impetus for the investigation into his account activity is wholly speculative and contradicted by substantial record evidence to the contrary.

Adamov has also admitted that he made a $10,000.00 loan to a bank customer in 2007, that the security department questioned him about it, and that he was told that his discharge was for this act. Further, Adamov has no evidence to controvert the testimony that the security and human resources departments determined that the 2007 loan to a customer violated the Code of Ethics and recommended Adamov's discharge. There is no evidence that Hartnack or Adamov's immediate superiors were involved in any way in the investigation. There is no dispute that SaLoutos made the final decision to terminate Adamov's employment, taking the recommendation given to him. There is no evidence of any other motive other than the 2007 loan for the decision to terminate him. *See ie., White*, 429 F.3d at 239 ("White cannot establish any link between this comment and the decision of the hiring committee not to hire her for the position.").

For these reasons, the court concludes that Adamov has failed to come forward with evidence from which a reasonable jury could find that the proffered reason for Adamov's discharge, the 2007 loan to a bank customer, did not actually motivate U.S. Bank to discharge him.

No genuine issue of material fact exists in this case. As U.S. Bank has articulated a legitimate, nondiscriminatory reason for Adamov's discharge and pretext has not been shown, U.S. Bank is entitled to judgment as a matter of law. A separate order will be entered this date in accordance with this opinion.

August 22, 2012

**Charles R. Simpson III, Judge**
**United States District Court**