UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:09-CV-868-CRS-CHL

**SERGE ADAMOV,**                                                                            **Plaintiff,**

v.

**U.S. BANK NATIONAL ASSOCIATION,**                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to compel discovery ("Motion to Compel") (DN 91) filed by Plaintiff Serge Adamov ("Plaintiff"). Defendant U.S. Bank National Association ("Defendant") filed a response (DN 94), and Plaintiff filed a reply. (DN 96.) This matter is now ripe for review. For the following reasons, the Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**.

**Background**

    **A. Procedural History**

Plaintiff was employed by Defendant as Vice President and District Manager of Defendant's Louisville, Kentucky office. Plaintiff approached his direct supervisor with concerns that he was being denied promotions based on his Azerbaijani national origin. Thereafter, Defendant opened an investigation into Plaintiff's banking activities. The investigation revealed that in 2007, Plaintiff made a personal loan to a college friend who was also a banking customer of Defendant. Defendant determined that employee loans to bank customers violated its ethics policy and terminated Plaintiff's employment effective August 31, 2009.

On September 23, 2009, Plaintiff filed suit in Jefferson Circuit Court, alleging that his termination violated the Kentucky Civil Rights Act in that it was motivated by either or both of: (1) his national origin; or (2) his complaints to supervisors about alleged national-origin discrimination. Defendant removed the action to this Court on the basis of diversity jurisdiction. On March 7, 2011, the Court granted Defendant's motion to dismiss with respect to Plaintiff's retaliation claim on the ground that Plaintiff failed to exhaust his administrative remedies. The Court denied the motion to dismiss as to Plaintiff's national origin discrimination claim, but, on August 23, 2012, granted summary judgment to Defendant as to that claim on the ground that Plaintiff failed to rebut Defendant's articulation of a legitimate, nondiscriminatory reason for Plaintiff's termination – that Plaintiff violated the ethics policy. On appeal, the Sixth Circuit reversed the Court on the motion to dismiss, holding that the Court should not have raised the issue of administrative exhaustion *sua sponte*. However, the Sixth Circuit affirmed the Court's ruling on summary judgment. The case was, therefore, remanded on Plaintiff's retaliation claim.

### B. Discovery Requests in Dispute

At issue now are certain discovery requests served by Plaintiff on Defendant on July 23, 2014 and August 26, 2014. (DN 91-3 ("First Discovery Requests"); DN 91-5 ("Second Discovery Requests").) Defendant responded to each set of discovery requests, objecting to some requests and responding substantively to others. (DN 91-4 ("First Discovery Responses"); DN 91-6 ("Second Discovery Responses").) In November and December 2014, counsel for the parties exchanged correspondence regarding Plaintiff's position that Defendant's responses were deficient and Defendant's position that its responses were adequate. (DN 91-7, 91-8, 91-9, 91-

10.) Ultimately, Plaintiff filed the Motion to Compel pursuant to Rule 37 of the Federal Rules of Civil Procedure.

The contested discovery requests and responses at issue are reproduced below:

**First Discovery Requests:**

*Interrogatory 11*. For the time period of January 1, 2002 to January 1, 2010, with regard to all employees who were discovered to have made a loan, from their personal funds, to existing bank customers, state the following:

- a) The name of the employee who made the loan.
- b) The work location of the employee.
- c) The date of the transaction.
- d) The disciplinary or other response by the bank to the transaction.
- e) Whether the bank considered mitigating factors in determining its response to the loan.
- f) Whether the bank determined that its ethics policy had been breached.
- g) The date of the ethics policy in force at the time of the incident.
- h) The verbatim language of the policy regarding loans that was in force at the time.

(DN 91-3 at 4.)

*Document Request 8*. Each and every document referred to in the foregoing Interrogatories, or referred to or relied on in your responses thereto.

**Second Discovery Requests:**

*Interrogatory 13*.[1] For the time period January 1, 2007 until January 1, 2010 identify each and every employee of Defendant

---

[1] In the Motion to Compel, Plaintiff identifies the interrogatories at issue as Interrogatories 11, 13, and 14. The First Discovery Requests consist of interrogatories numbered 1 through 11, and the Second Discovery Requests consist of interrogatories numbered 1, 2, and 3. Based on the numbering used by Defendant in its Second Discovery Responses and on references to the discovery requests in both parties' briefs, the Court construes "Interrogatories 13 and 14" to refer to those identified as "Interrogatories 2 and 3" in the Second Discovery Requests. For the sake of consistency, the Court will refer to the interrogatories at issue as "Interrogatories 13 and 14" herein.

> who was disciplined, terminated from employment, allowed or encouraged to resign, or otherwise separated from employment due, in whole or in part, to a violation of the policy or policies that Defendant alleges Plaintiff violated. For each individual so identified state their:
>
> a) Name, address, and telephone number;
> b) Position with defendant;
> c) Date of separation from employment;
> d) Whether the employee was disciplined, terminated, or resigned;
> e) The nature of the discipline, if any, and;
> f) The specific policy violated by the employee.

(DN 91-5 at 2.)

> *Interrogatory 14*. For the time period January 1, 2007 until January 1, 2010 identify each and every employee of Defendant who was investigated due, in whole or in part, to a violation of the policy or policies that Defendant alleges Plaintiff violated. For each individual so identified, state their:
>
> a) Name, address, and telephone number;
> b) Position with defendant;
> c) Date upon which the investigation began;
> d) Results of the investigation, including whether the employee was disciplined, terminated, resigned, or allowed to remain employed without being disciplined;
> e) The nature of the discipline, if any, and;
> f) The specific policy violated by the employee.

(DN 91-5 at 2.)

Defendant provided identical responses to Interrogatories 11, 13, and 14 and Document Request 8:

> *Response*. Objection. The request is overbroad, burdensome, not relevant to the claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence.

(DN 91-4 at 8, 11; DN 91-6 at 3.)

4

### C. The Motion to Compel

Plaintiff contends that Defendant's responses to the discovery requests set forth above are deficient, and requests that the Court compel Defendant to respond in full to the discovery requests. The parties agree that Plaintiff's intended purpose in serving the interrogatories and document request at issue was to elicit information from Defendant as to similarly-situated comparators. Plaintiff's position is that the information he seeks in the discovery requests at issue is relevant to his retaliation claim. Specifically, he argues that one element that he must meet in order to establish a prima facie claim of retaliation is that there is a causal connection between his alleged protected activity and Defendant's alleged adverse employment action. (DN 91-1 at 3 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).) Plaintiff argues that while no one factor is dispositive in establishing a causal connection, "evidence that defendant treated the plaintiff differently from similarly situated employees . . . is relevant to causation." (*Id.* at 4 (quoting *Nguyen*, 229 F.3d at 563).) Plaintiff further argues that evidence that Defendant treated similarly situated comparators differently than it treated Plaintiff is also relevant to demonstrate that Defendant's justification for terminating Plaintiff, the ethics policy violation, is mere pretext.

### D. Defendant's Response

Defendant characterizes the discovery requests at issue as a fishing expedition and urges the Court to exercise its discretion over the discovery process to deny the Motion to Compel. As it did in its objections to the individual discovery requests, Defendant argues that the discovery requests are overbroad and burdensome, and would not lead to the discovery of relevant evidence. Defendant does not dispute that evidence of similarly situated comparators would be

5

relevant to Plaintiff's retaliation claim, but argues that responses to the discovery requests at issue would not lead to evidence of such comparators. (DN 94 at 3.) Specifically, Defendant contends that under Sixth Circuit precedent, two employees cannot be similarly situated where there are different decision-makers involved in the adverse employment action. (*Id.* at 4 (citations omitted).) Defendant argues that Plaintiff misses the mark by focusing on whether individuals have different *supervisors*; the correct question, Defendant claims, is whether different *decision-makers* were involved in the adverse employment actions.

Defendant identifies two individuals as making the decision to terminate Plaintiff: (1) Arlene Mockapetris ("Mockapetris"); and (2) Steve SaLoutos ("SaLoutos"). (*Id.* at 6.) Defendant points to SaLoutos's deposition, at which he testified that he "was not aware of any other employee who loaned money to a customer." (*Id.* at 6.) Defendant states that Mockapetris "also has no knowledge of any employee, other than Plaintiff, who loaned money to a customer or was terminated for loaning money to a customer." (*Id.*) As a result of these statements by SaLoutos and Mockapetris, Defendant argues, the Court can conclude that responses to the discovery requests at issue would not produce evidence of similarly situated comparators.

Moreover, Defendant claims, even if there was a chance that discovery responses could lead to relevant evidence, any benefit from such a response would be outweighed by the burden on Defendant to produce such responses. Defendant states that Plaintiff seeks disciplinary records for all of its employees, nationwide, who, over an eight-year period, committed policy violations similar to the violation leading to Plaintiff's termination, and that to produce such records would require it to review disciplinary records relating to over 65,000 employees. (DN 94 at 7; DN 94-1.) Defendant further argues that the way it codes terminations would require it

6

to "locate and interview thousands of managers to determine which, if any, of the 10,298 terminations [coded similarly to Plaintiff's] could be responsive." (DN 94 at 8; DN 94-1.)

### E.  Plaintiff's Reply

In his reply, Plaintiff argues that Defendant ignores the fact that after Defendant objected to Interrogatory 11, which covered an eight-year time frame, he served the Second Discovery Requests. Interrogatories 13 and 14 cover only a three-year period. Plaintiff contends that while Defendant identifies SaLoutos and Mockapetris as the decision-makers with respect to Plaintiff's termination, in reality, SaLoutos testified at his deposition that a number of other people were also involved in the decision. (DN 96 at 2-3.) Plaintiff argues that the cases cited by Defendant are distinguishable in that in those cases, whether one was similarly situated was decided on a full record at the summary judgment stage, whereas here, discovery is necessary precisely because he needs more information from Defendant in order to identify potential comparators.

With respect to Defendant's argument that to perform an electronic search of disciplinary decisions would be unduly burdensome, Plaintiff characterizes Defendant's response as "essentially argu[ing] that its intentionally poor record keeping system excuses it from providing discovery materials that it would otherwise be required to disclose." (DN 96 at 7.) Plaintiff argues that the mere fact that developing a complete response to discovery requests will be time-consuming or expensive is insufficient to avoid producing such a response.

## Discussion

### A.  Legal Standard

"When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad

discretion to determine the bounds of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, 2013 U.S. Dist. LEXIS 135107, *5 (W.D. Ky. 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981), *cert. denied*, 454 U.S. 893 (1981)) (other citations omitted). "Absent a clear abuse of the trial court's discretion, its decisions regarding the scope of discovery will not be disturbed on review." *Id.* (citing *Chrysler Corp.*, 643 F.2d at 1240).

The scope of civil discovery is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Rule states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). The scope of discovery is not without limits, however. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery," provided that the party certifies to the Court that it has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1); *see id.* at (a)(3)(B)(iii)-(iv) (providing that a party may move to compel answers to interrogatories submitted under Rule 33 or to compel an inspection requested under Rule 34).

### B. The Process of Identifying Similarly Situated Employees

To begin, the Court finds that Plaintiff has satisfied Rule 37(a)(1) by certifying that before filing the Motion to Compel, he conferred in good faith with Defendant regarding the latter's objections to the discovery requests at issue. Plaintiff argues that the discovery requests at issue seek information that is relevant to his retaliation claim, and indeed, that such information is critical to his ability to establish a prima facie claim of retaliation. In order to establish a prima facie retaliation claim, a plaintiff must establish that "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."[2] *Nguyen*, 229 F.3d at 563 (citing *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir. 1996)) (additional citation omitted).

As is often the case in employment discrimination and retaliation cases, whether Plaintiff can establish a causal connection is a critical question in this case. To establish a causal connection, and thus satisfy the fourth prong of a retaliation claim, a plaintiff is required to produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not engaged in a protected activity. *Nguyen*, 229 F.3d at 563. "Although no one factor is dispositive in establishing a causal connection, evidence that [the] defendant treated the plaintiff differently from similarly situated employees or that the

---

[2] If the plaintiff succeeds in establishing a prima facie case, the burden of production of evidence shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citations omitted). If the defendant satisfies its burden of production, the burden then shifts back to the plaintiff to demonstrate that the reason proffered by the defendant was not the true reason for the employment decision. *Id.* (citations omitted). The plaintiff bears the burden of persuasion throughout the process. *Id.* (citations omitted).

adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* (citing *Moon v. Transport Divers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987). While courts have devoted much time to addressing the existence of a causal connection, including whether discovery requests are likely to lead to the production of evidence regarding similarly situated employees, "[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997); *Dixon*, 481 F.3d at 333 (same).

The parties agree that in this case, the dispute turns on whether the discovery requests are likely to produce evidence of similarly situated comparators who Plaintiff may use to establish a causal connection between his voicing of concerns that he was being discriminated against on the basis of his national origin and his termination. "In establishing that two people are similarly-situated, a 'plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment.'" *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 916-17 (6th Cir. 2013) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). "Instead, the plaintiff must demonstrate that he or she is similarly situated to the claimed comparator in *all relevant respects*." *Id.* at 617 (emphasis added) (quotations omitted). In the disciplinary context, the Sixth Circuit has held that the plaintiff and his or her proposed comparator must have engaged in acts of "comparable seriousness," looking to "certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal citations and quotations omitted); *see id.* (holding that proposed comparator would

10

not be considered similarly situated because coworker was "differently situated in the management structure of the store" and plaintiff's conduct was "admittedly more pervasive and severe").

Plaintiff is correct that whether two employees had the same supervisor is not necessarily determinative of whether they can be deemed similarly situated. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013) (noting that recent case law has clarified previous misconceptions and that "the supervisor inquiry 'does not automatically apply in every employment discrimination case'") (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (internal quotations omitted)). In *Louzon*, the Sixth Circuit reasoned that whether a comparator was working for the same supervisor as the plaintiff "should not be given significant weight" because the employee-to-supervisor ratio was so low that "the pool of potential comparators for [the plaintiff] would amount to no more than a few individuals." *Id.* at 564. The court found that limiting the pool of potential comparators to such a small group "would render any plaintiff's burden virtually impossible, even at the prima facie stage." *Id.*; *see also Seay v. TVA*, 339 F.3d 454, 479-80 (6th Cir. 2003) (stating that "the 'same supervisor' criterium [sic] has never been read as an inflexible requirement" and is "particularly problematic . . . where a violation . . . does not occur frequently enough to invite such a direct comparison within a compartmentalized organization") (citing *Ercegovich*, 154 F.3d at 353).

In this case, Plaintiff has a right to use the discovery process to attempt to develop evidence of potentially similarly situated employees. Defendant cannot side-step the issue by narrowly defining the pool of potential comparators as employees disciplined by Mockapetris or SaLoutos, particularly when the purported basis for Plaintiff's termination was a violation of an

rarely invoked ethics policy provision. Defendant has not presented the Court – or Plaintiff, through objections to the disputed discovery requests – with any information as to how many employees are supervised by Mockapetris or SaLoutos or, more generally, how its corporate structure would factor into an analysis of possible comparators. As is discussed in more detail below, it was incumbent upon Defendant to provide specific, detailed objections to Plaintiff's discovery requests. Without more information, the Court cannot accept at face value Defendant's objections as presently offered.

The Court now turns to Defendant's argument that the relevant question is not whether two employees have the same *supervisor(s)*, but whether their adverse employment decisions were made by the same *decision-maker(s)*. Defendant states accurately that some courts in our circuit have made a distinction between the plaintiff's supervisor(s) and the person or people who made the adverse employment decision. *See, e.g.*, *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 481 (6th Cir. 2008) (stating that "in many instances the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker'"); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2001) (concluding that under the circumstances of the case, the term "supervisor" was broad enough to encompass several individuals, and that whether the plaintiff and a purported comparator dealt with the same supervisor was "relatively insignificant to the case").

Defendant urges the Court to interpret Sixth Circuit case law as *requiring* that any other employee to be used by Plaintiff as a comparator must have dealt with the same decision-makers as Plaintiff. (*See, e.g.*, DN 94, Response, at 6 ("While the 'same supervisor' showing may not be required in every case, the same decision-maker *must be present* to find individuals to be

similarly situated.") (emphasis added).) Defendant argues that two individuals made the decision to terminate Plaintiff's employment and that based on those individuals' representations, no similarly situated employees exist. Defendant contends that "[a]ny response to these interrogatories *will not* produce evidence of another employee disciplined for the same or similar actions by the same decision-makers involved in Plaintiff's termination." (DN 94 at 7 (emphasis added).)

Having considered Defendant's arguments and Sixth Circuit precedent, the Court concludes that Defendant oversimplifies other courts' analysis as to the importance of the plaintiff and similarly situated employees having dealt with the same decision-maker. Defendant's contention that based on the recollections of the two individuals it identifies as the decision-makers, no response to the disputed discovery requests could lead to relevant evidence of comparators, is at the very least self-serving. As Plaintiff pointed out in his reply, it is far from clear that Mockapetris and SaLoutos are the only individuals who can be classified as "decision-makers" with respect to Plaintiff's termination. (*See* DN 96 at 2-3.) As is discussed above, whether an individual is to be considered a similarly situated comparator for purposes of establishing a causal connection is a case-specific determination based on "all relevant respects." *Martinez*, 703 F.3d at 917. Simply stating that neither Mockapetris nor SaLoutos is "aware" or "has knowledge" of other employees violating the ethics policy is insufficient to satisfy Defendant's obligations to respond to Plaintiff's discovery requests.

### C. The Scope of and Burden Related to Responding to the Discovery Requests

The Court recognizes Defendant's concerns regarding the time and expense that might go into reviewing records related to thousands of its more than 65,000 employees nationwide.

13

Nonetheless, the Court is unpersuaded by Defendant's contentions that the disputed discovery requests are overbroad and that responding would be prohibitively burdensome and expensive. At this juncture, it is not necessary for the Court to question the coding system that Defendant uses to track employee terminations. (*See generally* DN 94 at 7-8 (setting forth information regarding its coding of employee terminations and representing that the "only way" to locate similarly situated individuals "would be to locate and interview thousands of managers to determine which, if any, of the 10,298 terminations [identified thus far] could be responsive").) However, the Court cautions Defendant not to rely too heavily on such arguments. After all, Defendant alone chose how to track its employment decisions, and it is not absolved of its responsibilities under Rule 26 and other applicable Federal Rules of Civil Procedure and Local Rules simply because its chosen means of recordkeeping make searches cumbersome. Moreover, the Court questions why Defendant would code Plaintiff's termination with codes such as "dishonesty/fraud" or "theft/fraud/dishonesty." The Court is not aware of any allegation that Plaintiff engaged in fraud or theft.

Additionally, the Court finds lacking the declaration of Jeffrey Sippola ("Sippola"), who is employed by Defendant as a Litigation Response Consultant. Defendant offers Sippola's declaration as support for its contention that the disputed discovery requests are overbroad and that responding in full would be unduly burdensome. Sippola's analysis appears to be based only on Interrogatory 11, which sought information from January 1, 2002 through January 1, 2010, an eight-year period. Sippola's declaration does not address the fact that Plaintiff's Second Discovery Requests limit the time frame of inquiry to the three-year period of January 1, 2007 through January 1, 2010, which is significantly more narrowly tailored to identify possible

comparators who were disciplined around the time of Plaintiff's own termination. *See, e.g.*, *Leeper v. Verizon Wireless*, 2009 U.S. Dist. LEXIS 82272, *9-11 (S.D. Ohio 2009) (narrowing time frame and geographical reach of interrogatories and requiring defendant to produce information regarding lawsuits filed by individuals disciplined or terminated within two years before or one year after plaintiff's termination and in which three particular managerial employees were involved).

The Court finds that Defendant's blanket objections to the disputed discovery requests are inadequate to fulfill its obligations pursuant to the Federal Rules of Civil Procedure. *See Kafele v. Javitch, Block, Eisen, & Rathbone, LLP*, 2005 U.S. Dist. LEXIS 48484, *6 (S.D. Ohio 2005) ("The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.") (citing Fed. R. Civ. P. 37(a)(3); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Defendant cannot avoid producing—or even searching for--evidence that is relevant to Plaintiff's retaliation claim simply by relying on the purported memories of the two individuals that it identifies as the decision-makers in Plaintiff's case. Nor can it rest on its own apparently insufficiently detailed recordkeeping system.

The Court finds that the disputed discovery requests are likely to lead to the production of evidence relevant to Plaintiff's retaliation claim. Still, the Court is cognizant of Rule 26(b)'s mandate that the Court must "limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ.

P. 26(b)(2)(iii). The Court, therefore, narrows the discovery requests as set forth in the Order below.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (DN 91) is GRANTED IN PART and DENIED IN PART.

The Motion to Compel is DENIED to the extent that it requests that the Court order Defendant to respond to Interrogatory 11. Defendant NEED NOT supplement its response to Interrogatory 11.

The Motion to Compel is GRANTED to the extent that it requests that the Court order Defendant to supplement the remaining disputed discovery requests, AS AMENDED BELOW.

**No later than August 24, 2015**, Defendant SHALL RESPOND IN FULL to the following interrogatories and requests for production, as modified by the Court:

> *Interrogatory 13*. For the time period January 1, 2007 until January 1, 2010, identify each and every employee of Defendant who was disciplined, terminated from employment, allowed or encouraged to resign, or otherwise separated from employment due, in whole or in part, to a violation of the policy or policies that Defendant alleges Plaintiff violated. Your response may be limited to employees whose geographic location is within 250 miles of Louisville, Kentucky OR for whom the relevant employment decision was made, in whole or in part, by Arlene Mockapetris, Steve SaLoutos, Rick Hartnack, Charlotte Manison, Dale Jacobson, Patty Burk, George Souders, Emilye Bryan, Eric Durr, Michael Lafontaine, Chuck Tufts, John Welborn, and/or any other member of the Security or Human Resources departments. For each individual so identified, state his or her:
>
> a) Name, address, and telephone number;
> b) Position with Defendant;
> c) Date of separation from employment;
> d) Whether the employee was disciplined, terminated, or resigned;

    e) The nature of the discipline, if any, and;
    f) The specific policy violated by the employee.

  *Interrogatory 14*.  For the time period January 1, 2007 until January 1, 2010, identify each and every employee of Defendant who was investigated due, in whole or in part, to a violation of the policy or policies that Defendant alleges Plaintiff violated.  Your response may be limited to employees whose geographic location is within 250 miles of Louisville, Kentucky OR for whom the relevant employment decision was made, in whole or in part, by Arlene Mockapetris, Steve SaLoutos, Rick Hartnack, Charlotte Manison, Dale Jacobson, Patty Burk, George Souders, Emilye Bryan, Eric Durr, Michael Lafontaine, Chuck Tufts, John Welborn, and/or any other member of the Security or Human Resources departments.  For each individual so identified, state his or her:

    a) Name, address, and telephone number;
    b) Position with Defendant;
    c) Date upon which the investigation began;
    d) Results of the investigation, including whether the employee was disciplined, terminated, resigned, or allowed to remain employed without being disciplined;
    e) The nature of the discipline, if any, and;
    f) The specific policy violated by the employee.

  *Document Request 8*.  Produce each and every document referred to in Interrogatories 13 and 14, as narrowed above, or referred to or relied upon in your responses thereto.

Any and all aspects of the Motion to Compel not disposed of above are DENIED.

IT IS FURTHER ORDERED that the Court's Order of March 18, 2015 (DN 98) remains IN EFFECT.  **Within two (2) days** of complying with the instant Memorandum Opinion and Order, Defendant shall FILE A NOTICE certifying its compliance so that the Court may set deadlines for the close of discovery and dispositive motions.

Finally, IT IS ORDERED that no party shall file any motion related to the instant Memorandum Opinion and Order or any other discovery-related issue without first contacting

the undersigned's Case Manager, Theresa Burch, to request a status conference or hearing. Ms. Burch may be reached at theresa_burch@kywd.uscourts.gov or (502) 625-3546.

cc: Counsel of record