UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SERGE ADAMOV,                                                                                    PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:09-CV-00868-CRS

U.S. BANK NATIONAL ASSOCIATION                                                      DEFENDANT

<u>Memorandum Opinion</u>

I.      <u>Introduction</u>

Serge Adamov sued U.S. Bank National Association for wrongful termination and retaliation on the basis of national origin.

U.S. Bank moves for summary judgment on the remaining claim: retaliation. For the reasons below, the Court will grant summary judgment to U.S. Bank. The Court will dismiss the claim, with prejudice.

II.     <u>Summary judgment standard</u>

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

1

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Undisputed facts

Adamov is a native of Azerbaijan, a former Soviet republic. *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 852 (6th Cir. 2013). In 1998, he began work at U.S. Bank's predecessor. *Id.* Throughout his career at U.S. Bank, he was a "high-performing district manager." *Id.*

> In 2005, U.S. Bank hired Rick Hartnack as Vice-Chairman, which was a position three levels up the corporate hierarchy from Adamov. Adamov reported to Regional Manager Arlene Mockapetris, who reported to Executive Vice President Steven SaLoutos, who reported to Hartnack. On the handful of occasions on which Hartnack and Adamov interacted, Hartnack made statements that Adamov found offensive. When the two first met, in or around 2005, Adamov told Hartnack he was from Louisville, to which Hartnack responded[,] "Oh, your accent gives you up." On another occasion, Hartnack approached Adamov to congratulate him for a sales award he won, but stated during their conversation "Immigrants don't usually climb the corporate ladder." Finally, while Hartnack was giving a speech at a conference of district managers in 2008, he made the comment "I was talking to my managers and they looked at me like I was speaking Russian." Adamov, who had believed himself to be next in line for a promotion, took the statement as "a public slap in the face." At that time, Adamov began to make up his mind that the reason he had not yet been promoted was that Hartnack harbored animus based on Adamov's national origin.
>
> Adamov brought these concerns to Mockapetris, his direct supervisor, some time in 2009. Mockapetris spoke with Hartnack and then assured Adamov that Hartnack was not prejudiced against him. Shortly thereafter, U.S. Bank opened an investigation into Adamov's banking activities.
>
> According to U.S. Bank, it received a request for an investigation from its corporate Anti-Money Laundering Department on July 6, 2009. In addition to overseas transfer activity, the investigation revealed a loan that Adamov had made to a friend and U.S. Bank customer named Dmitri Shtapov in 2007. Admov had given Shtapov a check for $10,000, which Shtapov repaid without interest after approximately two weeks. Adamov characterizes the loan as [an] informal transaction with a college friend whom Adamov brought to the bank as a customer years earlier, when Adamov's employment began. Despite this characterization, the U.S. Bank investigation concluded that employee loans to bank customers violated the bank's ethics policy, and U.S. Bank terminated Adamov's employment on August 31, 2009.

*Id.* at 852 – 53.

2

IV.     Adamov's retaliation claim

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of national origin. 42 U.S.C. § 2000e-2(a). Title VII prohibits an employer from retaliating against an employee because the employee has made a charge of discrimination. 42 U.S.C. § 2000e-3(a). A plaintiff may prove retaliation through direct evidence or using the familiar *McDonnell Douglas* framework. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

A prima facie case of retaliation requires the plaintiff to show:

(1)     engagement in an activity protected by Title VII; (2) the employer knew of the protected activity; (3) the employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the adverse employment action and the protected activity.

*Id.*

Adamov contends that he has made a prima facie case of retaliation. Pl.'s Mem. Opp. Summ. J. 6, ECF No. 108.[1] U.S. Bank argues that Adamov cannot establish a prima facie case because he has not shown a causal connection between his firing and when he complained of national origin discrimination. Def.'s Mem. Supp. Mot. Summ. J. 4 – 5, ECF No. 103-1.

"A causal connection is established when a plaintiff proffers evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013) (internal quotation marks omitted). "Temporal proximity alone cannot establish a causal connection." *Id.* "However, temporal

---

[1] Adamov says that U.S. Bank "conceded the first three elements of Plaintiff's case." Pl.'s Mem. 6 (citing Def.'s Mem. 5 – 6). U.S. Bank did not develop an argument based on the knowledge element of the prima facie case, but in its pretext section, U.S. Bank wrote, "**None of the managers to whom Mr. Adamov reported, directly, or indirectly, were involved in the investigation**." Def.'s Mem. 2.
   For purposes of deciding this motion for summary judgment only, the Court assumes, without deciding, that Adamov has shown the knowledge element of the prima facie case. The Court also assumes, without deciding, that he engaged in activity protected by Title VII when he complained of national origin discrimination to Mockapetris, and that U.S. Bank took adverse employment action against him in firing him.

proximity always plays a role in establishing a causal connection; its significance depends on context." *Id.* With regard to the context,

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

Adamov argues that the "temporal proximity between his complaints of national origin discrimination and U.S. Bank's increased scrutiny of his conduct, and ultimately its termination of his employment," suffice to show a causal connection between his protected conduct and his termination. Pl.'s Mem. 7. This Court has already ruled that U.S. Bank's investigation of Adamov did not amount to an adverse employment action because U.S. Bank subjected all employees' banking activities to scrutiny, and employees knew that the bank would investigate questionable conduct. Mem. Op. 4, ECF No. 63. Thus, Adamov has the burden to show that the temporal proximity between his complaints of national origin discrimination and his firing suffice to show a causal connection between his protected conduct and his termination.

U.S. Bank argues that the temporal proximity between when Adamov complained of Hartnack's treatment of him and when U.S. Bank fired him is "insufficient to raise the inference that the adverse action would not have been taken had Plaintiff not engaged in the alleged protected activity." Def.'s Mem. 5. Further, U.S. Bank argues it had an "intervening legitimate reason" to fire Adamov when its Security Department discovered that he had made a $10,000 loan to Shtapov. *Id.*

*Kuhn* is instructive. In *Kuhn*, the court of appeals assumed that the plaintiff engaged in protected activity when he complained about how his supervisor treated him to other supervisors

4

in September 2009. *Kuhn v. Washtenaw Cty.*, 703 F.3d 612, 619 (6th Cir. 2013). The defendant fired him in January 2010. *Id.* at 620. The court said, "But Kuhn has provided no evidence to establish any link between the protected activity and his termination several months later. The relatively short amount of time elapsed does not, by itself, imply causation." *Id.* at 628. The court of appeals went on to say that the plaintiff "failed to provide any evidence aside from temporal proximity that links his protected activity to his termination." *Id.*

Viewing the evidence in the light most favorable to Adamov, four months passed between when he complained to Mockapetris in April 2009 and when U.S. Bank fired him on August 31, 2009. A lapse of four months between when Adamov complained of Hartnack's treatment of him and when he was fired is insufficient by itself to support an inference of retaliation. *See Kuhn*, 703 F.3d at 628; *see also*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation.").

Additionally, U.S. Bank's investigation into Adamov's wire transfers and the loan to Shtapov constituted an intervening reason for U.S. Bank to terminate his employment. In the context of discussing whether U.S. Bank's investigation was pretext for unlawful discrimination on Adamov's wrongful termination claim, the court of appeals said, "The evidence clearly supports the bank's showing that the investigation began wholly independent of Hartnack's influence and was brought to Hartnack when it had already received the support of the investigation team in Anti-Money Laundering Department and Adamov's direct supervisor." *Adamov*, 726 F.3d at 855. Although Adamov argues that he made a second protected act when he complained of national origin discrimination during an investigative interview conducted by U.S. Bank officials on July 30, 2009, this protected act fails to support an inference of retaliation

5

because he admits that the bank's investigation into his wire transfer and loan activities had begun before the meeting on July 30, 2009 when he told the investigators of his concerns. *See* Pl.'s Mem. 10. Thus, when U.S. Bank discovered that Adamov had loaned $10,000 to Shtapov, the discovery constituted an intervening legitimate reason to fire Adamov and "dispels an inference of retaliation based on temporal proximity." *Kuhn*, 703 F.3d at 628.

Adamov argues that the 2006 ethics policy, which was in effect when he made the loan to Shtapov, did not explicitly prohibit loans to customers. Pl.'s Mem. 13 – 14. The 2006 policy does not explicitly prohibit loaning money to customers like the 2008 policy did. *Compare* 2008 pol'y Page ID #1132, ECF No. 108-5 ("employees and their families are prohibited from borrowing money from (or lending money to) customers (other than financial institutions), suppliers, other employees, or independent contractors.") *with* 2006 pol'y Page ID #1105, ECF No. 108-4 ("Employees and their families are prohibited from borrowing from customers (other than financial institutions), suppliers, other employees or contingent workers.").

This is unpersuasive. The 2006 ethics policy also says, "employees in the securities industry are legally prohibited from borrowing from or lending to clients." *Id.* Adamov argues, "There is clearly nothing unlawful about writing or receiving a check." Pl.'s Mem. 13 n.2. While writing or receiving a check may not be unlawful, U.S. Bank had every right to fire Adamov when it had reason to believe he violated an ethics rule prohibiting employees from loaning money to customers. Ultimately, Adamov has failed to raise a genuine issue of material fact regarding whether there was a causal relationship between his protected activity and his firing.

6

Without proof tending to show a causal relationship between his protected activity and his firing, Adamov has failed to establish a prima facie case of retaliation. The Court will grant summary judgment to U.S. Bank on Adamov's retaliation claim.

V.     Conclusion

The Court will grant summary judgment to U.S. Bank on Adamov's retaliation claim. The Court will dismiss the claim, with prejudice. The Court will enter a separate order in accordance with this opinion.

March 18, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

7